NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN RYAN, | : |
| Plaintiff, | : Civil Action No. 16-814 (SRC) |
| v. | : **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | : |
| Defendant. | : |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff Kevin Ryan ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. Civ. R. 9.1(b), finds that the Commissioner's decision will be affirmed.

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning November 2, 2008. A video hearing was held before ALJ Gerardo R. Picó (the "ALJ") on July 21, 2014, and the ALJ issued an unfavorable decision on August 27, 2014. After the Appeals Council denied Plaintiff's request for review of the determination of the date of onset, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

In the decision of August 27, 2014, the ALJ found that, at step three, Plaintiff did not

meet or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform light work, with certain limitations. At step four, the ALJ also found that Plaintiff retained the residual functional capacity to perform his past relevant work as a toll collector and as an assembler of billiard tables. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded on two grounds: 1) Plaintiff challenges the use of Dr. Malaret as a medical expert; and 2) Plaintiff challenges the use of the testimony of the vocational expert at step four.

As to the first point, Plaintiff's brief does not clearly articulate a persuasive argument. Plaintiff contends that he was not permitted to question Dr. Malaret about his credentials. The Commissioner responds by noting that the record shows that Plaintiff's counsel questioned Dr. Malaret at some length. (Tr. 38-47.) Plaintiff does not point to any evidence that the ALJ barred him from questioning the expert's credentials. The record provides no support for Plaintiff's argument that he was "never permitted to question [the expert] regarding his credentials." (Pl.'s Br. 17.)

Plaintiff also tries to make something out of the fact that the record shows the ALJ addressing the expert as "Dr. Mata," but, according to the expert's resume, his name was Dr. Malaret. Plaintiff has not persuaded this Court that the ALJ's addressing the expert with an incorrect name is a material issue or harmed Plaintiff in any way. Plaintiff argues: "we have no idea who actually testified." (Pl.'s Br. 18.) The record does not indicate that Plaintiff's counsel was uncertain about the identity of the expert witness at the time of the hearing. Plaintiff had the opportunity to ask the expert his correct name and did not do so. There is no evidence that the

2

ALJ relied upon the testimony of an imposter. The matter of the ALJ's mistakes about the name of the expert at the hearing cannot be more than a minor and harmless error.

Plaintiff then points to controlling authority that the Commissioner may not reject a treating physician's opinion without contradictory medical evidence, but does not connect this correct statement of the law to anything that occurred in this case.

As to the second point, Plaintiff critiques the vocational expert's analysis of the requirements of Plaintiff's past relevant work as a toll collector and an assembler of billiard tables. Plaintiff argues that the vocational expert's testimony about the demands of work as a toll collector is problematic because it is "obvious" that he was thinking about the demands on a toll collector in Puerto Rico rather than in New Jersey.[1] This is entirely speculative. Plaintiff had the opportunity to question the vocational expert, and in fact did question the vocational expert on this exact issue, the environmental conditions of work as a toll collector. (Tr. 49-50.) Plaintiff points to no evidence that Plaintiff lacks the residual functional capacity to work as a toll collector because of any limitations in his capacity to tolerate humidity or temperature.

Plaintiff's argument also fails because it rests on an incorrect understanding of the burden of proof. Plaintiff bears the burden of proof in the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). At step four, the Commissioner does not have the burden of proving that Plaintiff retains the residual functional

---

[1] This was a video hearing, and both the ALJ and the vocational examiner were in Puerto Rico, while Plaintiff appeared in New Jersey. (Tr. 14.)

3

capacity to perform his past relevant work.[2] Rather, Plaintiff bears the burden of proving that he lacks the residual functional capacity to perform his past relevant work. Plaintiff has not pointed to any evidence that he is unable to perform his past relevant work as a toll collector. The Commissioner's step four determination is supported by substantial evidence. Because of this conclusion, this Court need not reach Plaintiff's arguments about the vocational expert's testimony about the job requirements of work as a billiard table assembler.

For the foregoing reasons, this Court finds that the Commissioner's decision is supported by substantial evidence, and the Commissioner's decision is affirmed.

       s/ Stanley R. Chesler
       STANLEY R. CHESLER, U.S.D.J.

Dated: June 1, 2017

---

[2] At step five, the Commissioner bears the burden of proof. Vocational experts often provide testimony which the Commissioner might weigh in making the step five determination. In this case, however, the ALJ used the VE testimony to make a step four determination.